**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **HANEEF MUHAMMAD,** | : | |
| | : | |
| **Plaintiff,** | : | Case No. 2:24-cv-03676 |
| | : | |
| v. | : | Judge Algenon L. Marbley |
| | : | |
| **GAP INC., et al.,** | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| **Defendants.** | : | |

**OPINION & ORDER**

This matter is before the Court on Plaintiff's Motion to Remand ("Motion"). (ECF No. 9). For the reasons set forth below, Plaintiff's Motion is **DENIED**.

**I.   BACKGROUND**

Plaintiff, a former employee of defendant Gap Inc., brings four claims against defendants Gap Inc. ("Gap"), Elizabeth Weeden, Seth Vogelstein, Disability Occupational Consultants, Verisk Analytics, and the Hartford Life and Accident Insurance Company ("Hartford"). (ECF No. 33).

By virtue of his employment, Plaintiff participated in Defendant Gap's employee benefit plan and was covered under a group long-term disability ("LTD") insurance policy ("Group Policy"). (ECF No. 40 at 8). The Group Policy is a plan governed by Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001, et seq ("ERISA"). (ECF No. 29 at 1). The LTD insurance policy was issued by Hartford, to, in part, fund Gap's employee welfare benefits plan. (ECF No. 40 at 8).  Hartford is the plan administrator and claims its "only relationship with Plaintiff is that of an ERISA claims administration fiduciary." (ECF No. 29 at 1).

On October 22, 2023, Plaintiff's employment was terminated by Gap for Plaintiff "not returning to work in a timely fashion." (ECF No. 33 at 4). Plaintiff alleges this termination was after Gap learned of an MRI taken of Plaintiff that showed Plaintiff had a tear in his right rotator cuff. (*Id*.). On October 26, 2023, Hartford denied Plaintiff's LTD claim because he was no longer an active employee. (ECF No. 33 at 5). Plaintiff appealed this claim and was found to be eligible for benefits. Plaintiff alleges that Hartford then denied Plaintiff's claim again in bad faith because Plaintiff was receiving workers compensation. (ECF No. 33 at 5).

Plaintiff filed suit *pro se* on June 4, 2024, in the Court of Common Pleas, Franklin County, Ohio. (ECF No. 30 at 3). Plaintiff filed an Amended Complaint on September 11, 2024. (ECF No. 33). Plaintiff's Amended Complaint, however, lacks overall clarity. In Claim I, Plaintiff alleges an "ISO claim search" involving Elizabeth Weeden, Verisk, Gap, and a report completed by Dr. Vogelstein's were malicious and intended to injure Plaintiff's reputation by asserting Plaintiff committed insurance fraud. (*Id*. at 2). This is presumably in connection with benefits-related decisions giving rise to most of Plaintiff's claims. Claim II references Gap and Weeden, and addresses Plaintiff's termination by Gap, alleges it was wrongful, and alleges he was unlawfully sent a bill for unpaid health insurance premiums while he sought participation in a workers compensation fund and "covered by the ADA" (*Id*. at 4). Plaintiff asserts this was done deliberately to cause harm, actions were taken against him because of his race and religion, and that the treatment by GAP created a hostile work environment. (*Id*.). Claim III addresses Hartford's denial of Plaintiff's LTD claim and states it was discriminatory (and references the New South Wales Anti–Discrimination Act 1977). (*Id*. at 5). Claim IV only references Dr. Vogelstein and alleges that Vogelstein "perform[ed] movements of the plaintiff's body, despite Plaintiff's objection, which caused Plaintiff pain and forced Plaintiff to object to the exam. Plaintiff did have

2

an MRI performed after Dr. Vogelstein examination and the result was a partially torn rotator cuff." This is presumably referring to the report included in the first claim and the denial of benefits. (*Id*. at 6). Plaintiff also alleges that, with respect to the fourth claim, "there may be an issue of prejudice and or discrimination of race, sex or religion here also." (*Id*.).

Based on this Court's understanding of Plaintiff's claims, it appears he brings four causes of action: (1) a claim of defamation against Defendants Weeden, Vogelstein, Verisk Analytics and Disability Occupational Consultants; (2) claims for retaliation and discrimination against Defendant Gap in relation to denial of LTD benefits, unpaid health insurance premiums, and wrongful termination; (3) a claim for wrongful denial of LTD benefits against Defendant Hartford.

On July 8, 2024, Defendant Hartford removed the action based on federal question jurisdiction and all other Defendants consented to the removal action. (ECF No. 1). On August 6, 2024, Plaintiff filed a Motion to Remand, claiming that removal was improper because he "did not allege any ERISA violations" and therefore did not implicate federal question jurisdiction. (ECF No. 9). While the Motion to Remand was filed before Plaintiff filed an Amended Complaint and Defendants' responses in opposition to the Motion to Remand reference the original Complaint, this Court notes the claims in each are nonetheless significantly similar. This Court's decision, thus, would be the same whether referencing the original complaint or the amended version.

## II. STANDARD OF REVIEW

"'Federal courts are courts of limited jurisdiction.'" *Rasul v. Bush*, 542 U.S. 466, 489 (2004) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). Civil actions brought in state court may be removed to the applicable federal district court by a defendant if the federal court has original jurisdiction over the claim. 28 U.S.C. § 1441(a). Federal courts

3

have original jurisdiction over any civil actions arising out of a federal question. 28 U.S.C. § 1331. Generally, the federal question supporting removal must be apparent from the face of the complaint—the well-pleaded complaint rule. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987) (citing *Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149 (1908)). However, original jurisdiction may still exist even where a Complaint fails to plead a federal claim. Certain federal statutes possess a "unique pre-emptive force" that "converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Id.* at 65. An entire case may be removed if it possesses any claims arising under federal law. 28 U.S.C. § 1441(c).

Under supplemental jurisdiction, district courts have original jurisdiction over any claim that originates in state court and is "so related to claims" arising under federal law "that they form part of the same case or controversy under Article III of the United States Constitution." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting 28 U.S.C. § 1367(a)) ("That provision applies with equal force to cases removed to federal court as well as to cases initially filed there; a removed case is necessarily one of which the district courts . . . have original jurisdiction.") (internal quotations omitted). Supplemental jurisdiction exists when the federal claim and the state law claim arise out of a "common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). By allowing all of a party's claims to be decided by one court, rather than by two separate proceedings by a federal and a state court, supplemental jurisdiction promotes the values of judicial economy, convenience, fairness, and comity. *See Plain Local Sch. Bd. of Educ. v. DeWine*, No. 2:19-cv-5086, 2020 WL 5521310, at *15 (S.D. Ohio Sept. 11, 2020) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 349−50 (1988)).

The party requesting removal bears the burden of proving their right to do so. *Her Majesty The Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

### III. LAW & ANALYSIS

#### A. LTD Benefit-Related Claims are Completely Preempted by ERISA

ERISA sets out a comprehensive system for regulating employee benefit plans, including welfare plans, and "applies generally to all employee benefits plans sponsored by an employer or employee organization." *District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 127 (1992). 29 U.S.C. § 1002(1) defines an employee welfare plan is as:

> Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services…

There is no dispute that Defendant's LTD plan falls within ERISA's definition of an employee welfare plan.

Ordinarily, the decision as to whether a case arises under federal law turns on the "well-pleaded complaint rule." *Aetna Health Inc. v. Davila*, 542 U.S. 200, 206 (2004). It is well understood that "whether a case is one arising under the Constitution or a law or treaty of the United States… must be determined from what necessarily appears in the plaintiff's statement of his own claim…" *Taylor v. Anderson*, 234 U.S. 74, 75 (1914). However, certain statutes possess an "extraordinary pre-emptive power" that completely preempts claims arising out of state law. *Metro Life Ins. Co v. Taylor*, 481 U.S. 58, 65 (1987). ERISA's civil enforcement provision, § 502(a), possess this complete and "extraordinary pre-emptive power", providing an exclusive

5

federal cause of action for ERISA-plan beneficiaries asserting a claim under the plan. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 52 (1987) (finding that Congress intended § 502(a) to be the "exclusive vehicle for action by ERISA-plan participants … and that varying state causes of action for claims within the scope of § 502(a) would pose an obstacle to the purposes and objectives of Congress.") This "preemption on steroids" not only preempts state law but also creates federal removal jurisdiction. *Palkow v. CSX Transp., Inc.*, 431 F.3d 543 553 (6th Cir. 2005).

Thus, although claims may not be expressly pleaded as a federal question, claims arising out of state law may be removed if they fall within this complete preemption doctrine. *See Caffrey v. Unum Life Ins. Co.*, 302 F.3d 576, 582 (6th Cir. 2002) (finding that state tort and contract claims were preempted by ERISA because they stemmed from the processing of disability benefits and sought judicial remedies beyond what ERISA provided); *Ackerman v. Fortis Benefits Ins. Co.*, 254 F.Supp. 2d 792, 812 (6th Cir. 2003) (noting that a breach of contract claim was completely preempted by ERISA and therefore was to be treated as stating a claim under ERISA); *Johnson v. Décor Fabrics, Inc.*, 250 F.R.D. 323, 329 (6th Cir. 2008) (finding that state law claims falling within ERISA's scope were completely preempted and to be treated as ERISA claims for the purposes of the well-pleaded complaint rule).

While Plaintiff iterates he is not alleging an ERISA violation, this fact is irrelevant in determining whether his state law claims are preempted. (ECF No. 47 at 3). A claim is completely preempted by ERISA if two prongs of a two-factor test are met: "(1) the plaintiff complains about the denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated employee benefit plan'; and (2) the plaintiff does not allege the violation of any 'legal duty (state or federal) independent of ERISA or the plan terms.'" *Hogan v. Jacobson*, 823 F.3d 872, 879 (6th Cir. 2016) (citing *Gardner. Heartland Indus. Partners, LP*, 715 F.3d 609, 613 (6th Cir. 2013)).

To determine whether state law claims satisfy the first prong, courts inquire whether the essence of a claim is for recovery of an ERISA benefit plan. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002). Plaintiff alleges, under the third claim of his Complaint, that Defendant Hartford's initial denial of his LTD claim, lack of communication and delay in peer review caused him damage and mental anguish. (ECF No. 33 at 5). Defendant Hartford's sole connection to Plaintiff is in its role as a claims administrator. Additionally, Defendant's review of Plaintiff's LTD benefits makes up the alleged wrongdoing underscoring the Plaintiff's claims.

In *Milby*, the plaintiff received LTD benefits from their employer through a policy issued and underwritten by Liberty Life Assurance Company. *Milby v. Liberty Assur. Co.*, 102 F. Supp. 3d 922, 925 (E.D. Ky. 2015). Upon subsequent eligibility review, Liberty determined that plaintiff was no longer eligible according to the terms of the policy. *Id*. The plaintiff brought various state law claims and Liberty removed the case to federal court. *Id.* There, Liberty's sole relation to the plaintiff was as the "issuer and underwriter" of the policy and the alleged improper conduct revolving around the plan made up the plaintiff's claims. *Id.* at 935. The court found that the first prong was satisfied because, although the plaintiff framed the claims in state law terms, all the claims revolved around the denial of LTD benefits to which she believed she was entitled through an ERISA-regulated plan. *Id.*

Plaintiff's state law claims meet the first prong of the test. The essence of Plaintiff's claims is to recover damages based on the alleged improper processing of his LTD claim by Defendants. Plaintiff points to denial of his benefits in "bad faith" and a lack of proper communication that caused him "damage" and "mental anguish." (ECF NO. 33 at 3). Plaintiff also alleges that the inappropriate amount of time taken for peer review also cause him mental anguish. (*Id.*). These

7

allegations revolve around the alleged improper processing of his LTD claim with the Plaintiff seeking damages as a result.

As to the second part of the test, Plaintiff fails to allege a violation of any legal duty independent of ERISA or the terms of the LTD policy. Plaintiff's third claim cannot arise independently of ERISA or the plan because requires analysis of the terms of the plan. "Whether a duty is 'independent' of an ERISA plan… does not depend merely on whether the duty nominally arises from a source other than the plan's terms." *Gardner*, 715 F.3d at 613.

In *Hogan*, the plaintiff was covered by a disability-insurance policy through her employer. *Hogan*, 823 F.3d at 877. In reviewing her eligibility, the insurance company that supplied the policy hired the defendant to provide a medical review plaintiff's eligibility under the policy. *Id.* Plaintiff brought suit alleging improper denial of her LTD benefits. *Id.* The court held that plaintiff did not successfully allege a legal duty independent of the plan because a key part of the relationship between the parties "arose in the context of a benefits-review process under an ERISA plan." *Id.* at 881. Consequently, the defendants' duty in this case existed solely due to, and within the context of, the benefits review mandated by the plan. *Id.*

Plaintiff's relationship with Defendant Hartford arose from the application of the ERISA plan. Plaintiff's claims fail to allege a violation of a legal duty independent of ERISA for the causes of action arising from the denial of his LTD claim. Accordingly, both prongs are satisfied and there is federal jurisdiction over Plaintiff's causes of action regarding the denial of his LTD claim.

## B. There Is Supplemental Jurisdiction Over Remaining Claims

District courts have original jurisdiction, under the supplemental jurisdiction doctrine, over any claim originating in state court that is "so related to claims" arising under federal law "that they form part of the same case or controversy under Article III of the United States Constitution."

8

*City of Chicago*, 522 U.S. at 165. State law claims form part of the same case or controversy when they "derive from a common nucleus of operative fact" such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Basista Holdings, LLC v. Ellsworth Twp.*, 710 Fed. Appx. 688, 694 (quoting *United Mine Workers of Am.*, 383 U.S. at 725).

Plaintiff's claims against Defendants are so related to the ERISA claims that they form part of the same case or controversy because the derive from a common nucleus of operative fact. Claims I and IV of Plaintiff's Amended Complaint alleges that Defendants, in reviewing his ISO claim, conspired to defame him and paint him in a false light. (ECF No. 33, at 3). The review of Plaintiff's claim occurred after Plaintiff tried to avail himself of the benefits he was entitled to under the ERISA plan. Under Claim II, Plaintiff alleges that his termination came after Defendant Gap learned that his MRI showed a tear in his right rotator cuff. (ECF No. 33 at 4). Plaintiff also alleges that false information was given to Defendant Hartford, the plan administrator. (ECF No. 33 at 5). These claims implicate his pursuit of his benefits under a plan governed by ERISA, and the subsequent alleged misconduct that occurred in pursuit of his benefits.

Therefore, this Court has supplemental jurisdiction over the remaining claims.

## V. CONCLUSION

For the reasons stated above, Plaintiff's Motion to Remand is **DENIED**.

**IT IS SO ORDERED.**

                      **ALGENON L. MARBLEY**
                      **UNITED STATES DISTRICT JUDGE**

**DATED: March 28, 2025**