# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **HANEEF MUHAMMAD,** | | **CASE NO. 2:24-cv-03676** |
| | **Plaintiff,** | **JUDGE COLE** |
| **vs.** | | **MAGISTRATE VASCURA** |
| **GAP INC., ET AL** | | **PLAINTIFF'S MOTION FOR RECUSAL OF JUDGE DOUGLAS R. COLE** |

Pursuant to 28 U.S.C. §§ 144 and 455, Plaintiff Haneef Muhammad respectfully moves for the recusal of the Honorable Judge Douglas R. Cole from further proceedings in this matter. This motion is made in good faith and supported by specific facts that would lead a reasonable person to question the Court's impartiality and ability to adjudicate this case fairly and without bias. The Memorandum in Support is attached hereto.

Respectfully submitted,


/s/Haneef Muhammad
Haneef Muhammad, Pro Se
3040 Southfield Drive
Columbus, OH 43207
cmuhammad2@student.cscc.edu
614-893-5021

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **HANEEF MUHAMMAD,** | **CASE NO. 2:24-cv-03676** |
| **Plaintiff,** | **JUDGE COLE** |
| **vs.** | **MAGISTRATE VASCURA** |
| **GAP INC., ET AL** | **MEMORANDUM IN SUPPORT** |

**INTRODUCTION**

1.  This Court has shown consistent favoritism toward powerful defendants while
    silencing a pro se plaintiff seeking basic judicial protection. By failing to address

any of Plaintiff's three emergency motions or accompanying declarations none of which were opposed the Court has abandoned its duty of impartial adjudication. There is a dedicated section in Plaintiff's emergency motion outlining irreparable harm. It is not for this specific judge to unilaterally override binding Sixth Circuit precedent on what constitutes irreparable harm. Rather, the Plaintiff need only meet the applicable legal threshold set by higher courts, which has been satisfied. This Court has instead chosen to impose its own subjective interpretation, effectively taking the law into its own hands and operating outside the framework of controlling authority. In doing so, the Court has not only undermined Plaintiff's constitutional rights but has also damaged the appearance of fairness and threatens to destroy public confidence in the judiciary. That is, by definition, grounds for recusal under 28 U.S.C. § 455.

2. Moreover, Plaintiff has alleged and documented that defense counsel misrepresented his eligibility for Social Security Disability Insurance (SSDI) benefits. This misrepresentation was not incidental; it was used as a tool of coercion to induce Plaintiff to sign a waiver agreement relinquishing key federal rights, including under the ADA and ERISA. The coercive use of false or misleading information relating to federal disability benefits constitutes irreparable harm under both constitutional and equitable principles.

3. Such conduct directly implicates Plaintiff's reliance on vital income and healthcare protections and induced decisions under duress. Courts have consistently held that the loss of Social Security or disability benefits due to fraudulent inducement or misrepresentation causes harm that is not purely economic, but systemic and ongoing. It undermines the Plaintiff's ability to survive and to participate in the legal process. See Obama for America v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) ("[I]rreparable harm exists where constitutional rights are threatened or impaired."); Doe v. Univ. of Cincinnati, 872 F.3d 393, 407 (6th Cir. 2017) (recognizing due process violations as irreparable harm).

4. Furthermore, the Supreme Court has long held that misrepresentation which induces the waiver of federal rights, particularly involving public entitlements or protected status, justifies immediate judicial intervention. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."). The deprivation of access to fair adjudication and the coerced relinquishment of federal protections go far beyond monetary loss—they erode the structural protections guaranteed by the Constitution.

5. Not once has this Court addressed the documented threats submitted by Plaintiff. Not once has the Court instructed defense counsel Eric Mathisen to stop the coercive conduct, nor has it issued any public reprimand for actions that have chilled Plaintiff's constitutional right to seek redress. Instead, the Court chose to characterize Plaintiff—a disabled, pro se litigant seeking emergency protection—as akin to a mentally ill prisoner, thereby dehumanizing Plaintiff's plea for help. This is particularly egregious given that the emergency motion included a detailed and labeled section outlining irreparable harm. The Court ignored it entirely. At this point, it is no longer credible to believe that this proceeding remains fair or impartial. The cumulative record clearly shows systemic disregard for Plaintiff's rights, unequal treatment under the law, and a judicial pattern of siding with those in power at the expense of due process and dignity.

## LAW AND ARGUMENT

### The Court Has Ignored Binding Precedent in Favor of Subjective Judicial Standards

6. Federal courts are required to apply controlling precedent when evaluating requests for injunctive or emergency relief, particularly in constitutional and civil rights cases. Plaintiff's emergency motion (Doc. 76) and supplements (Docs. 80, 83, 84, 85, 86, and 89) cited substantial evidence of irreparable harm, including ongoing coercion, threats, psychological distress, and the denial of court access. These harms directly implicate rights secured by the First and Fifth Amendments and the Americans with Disabilities Act (ADA).

7. Rather than applying the binding precedent that governs such cases, the Court imposed a heightened and subjective burden on the Plaintiff, concluding without a fair hearing or full record review that no irreparable harm existed. This conclusion misstates the law and disregards controlling authority.

8. Under well-settled precedent, courts have consistently recognized that:

- Irreparable harm is presumed in cases involving constitutional violations. See Elrod v. Burns, 427 U.S. 347, 373 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.");
- Psychological harm, retaliation, and denial of access to courts are forms of irreparable injury, particularly where threats or coercion are involved. See Obama for America v. Husted, 697 F.3d 423, 436 (6th Cir. 2012);
- Preliminary injunction standards do not require plaintiffs to prove harm that is "uncompensable by money" when asserting ongoing civil rights violations. See Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982).

9. Despite these precedents, the Court denied Plaintiff's motions without analyzing the specific claims of constitutional or ADA-based harm. It instead asserted that no "immediate harm" existed beyond contractual disputes, an assertion that directly contradicts the sealed declarations and supporting evidence Plaintiff submitted. The Court's decision therefore rests not on application of law but on its own redefinition of legal standards contrary to the rulings of the Sixth Circuit and the U.S. Supreme Court.

10. This is not merely judicial error it is a pattern of prejudgment, selective silence, and deviation from binding authority, all of which give the appearance of bias and partiality in violation of 28 U.S.C. § 455(a). A judge may not substitute their personal disbelief or mischaracterization for established precedent. Recusal is warranted where a judge's decisions indicate a refusal to apply settled law in a way that favors one party, particularly when that party includes large institutional defendants with legal teams who did not respond to emergency motions and yet faced no sanction or scrutiny.

11. This conduct, taken together with the Court's silence regarding threats, refusal to lift the gag, and comparison of Plaintiff to a mentally ill prisoner, calls the Court's impartiality into serious question and undermines public confidence in the judiciary.

12. The Court rejected all pending emergency filings without holding a fair hearing, and without applying controlling precedent. Instead, the Court claimed no irreparable harm existed because the alleged injuries were "contractual" or "remediable by monetary damages," even though such conclusions contradict settled Supreme Court and Sixth Circuit precedent:

- Elrod v. Burns, 427 U.S. 347, 373 (1976) – "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury."
- Obama for America v. Husted, 697 F.3d 423, 436 (6th Cir. 2012) – Irreparable harm is presumed in constitutional rights cases.
- Friends of the Earth v. Laidlaw, 528 U.S. 167 (2000) – Non-economic harms like reputational damage and retaliation can constitute irreparable harm.
- Friendship Materials, Inc. v. Michigan Brick, Inc., 679 F.2d 100, 105 (6th Cir. 1982) – Civil rights violations need not be proven "uncompensable by money" to qualify for emergency relief.

13. The Court ignored these ruling and imposed a heightened, subjective, and extra-statutory burden on a pro se Plaintiff. Furthermore, the judge failed to acknowledge an entire section of the emergency motion titled "Irreparable Harm" and gave no consideration to sealed declarations that described threats and coercive tactics in detail.

14. This is not a mere disagreement in interpretation it is an abandonment of judicial duty to follow precedent. Such conduct not only prejudices Plaintiff's rights, but creates the appearance of bias, selective enforcement, and misuse of judicial discretion in violation of 28 U.S.C. § 455.

**The Court Cannot Ignore Written Pleadings While Demanding Live Testimony**

15. Plaintiff has submitted multiple sworn declarations, emergency motions, and supplemental filings, each detailing the irreparable harm, coercion, and threats that gave rise to this dispute. These filings were made in good faith and contain factual support, legal analysis, and exhibits that clearly communicate the Plaintiff's position.

16. The Court cannot disregard these filings and then claim Plaintiff must appear at a hearing to "explain" the very harms that were already thoroughly presented in writing. Doing so places form over substance and suggests that live participation is only sought to subject Plaintiff to further intimidation especially while he is gagged and explicitly denied the right to speak freely. It is both illogical and procedurally unjust for the Court to ignore written content, yet expect oral testimony to somehow supply what was already clearly provided.

17. In essence, Plaintiff did speak through his motions and evidence. To demand verbal repetition while disregarding detailed written submissions contradicts due process and is further evidence of bias. A fair tribunal must evaluate the merits of filings, not the plaintiff's physical presence under duress.

**The Court Created a Coercive Catch-22**

18. By issuing a filing restriction (Doc. 91), gagging Plaintiff, then demanding that Plaintiff appear at a hearing "to explain irreparable harm," the Court imposed a coercive and paradoxical condition: appear while gagged and risk further harm, or refuse to appear and be punished. Plaintiff filed a Notice of Non-Appearance (Doc. 92) citing fear for his safety, but the Court held the hearing anyway and heard only from the defense further violating Plaintiff's due process rights.

**Institutional Silencing and Irreparable Harm**

19. The Court's response effectively instructing Plaintiff to refile detailed motions documenting coercion, collusion, and civil rights violations after having ignored the original filings, constitutes institutional silencing. This act compounds irreparable harm already sustained. Rather than addressing the substance of Plaintiff's emergency filings, the Court deferred, dismissed, and ultimately denied them without a hearing, only to later suggest they be refiled.

20. This is not a neutral procedural stance. It reflects an indifference to the urgency of civil rights violations and psychological harm. It signals that even well-supported allegations of misconduct accompanied by sealed declarations and no opposition—are not enough to merit protection unless repeated, restated, or rephrased to the Court's subjective satisfaction.

Such treatment:

- Discourages vulnerable litigants from seeking judicial relief;
- Elevates abuser narratives over documented harm;
- Erodes public trust in the impartiality of the judiciary;

- And conflicts directly with the legal standard requiring disqualification under 28 U.S.C. § 455 where judicial impartiality may reasonably be questioned.

21. A judiciary that ignores threats while gagging the victim, then demands re-litigation of those same threats, promotes coercion, not justice. That is irreparable harm. And it demands recusal.

## Retaliation Through Silence and Procedural Gagging

22. Plaintiff was effectively silenced through a pre-hearing filing restriction, imposed after the filing of sealed emergency motions that documented coercion, threats, and psychological harm. Rather than addressing these motions or protecting Plaintiff's rights, the Court required Plaintiff to appear at a hearing while still under restriction. This created a procedural Catch-22: Plaintiff could not speak through filings, and was expected to defend himself live, in front of adversarial parties, while being denied any protection.

23. Such a dynamic is not mere judicial management it constitutes a structural form of retaliation that disincentivizes access to emergency relief. The Court's refusal to lift the gag or to consider the sealed materials in good faith renders any subsequent invitation to "explain irreparable harm" hollow and coercive.

## Appearance of Judicial Alignment with Institutional Abuse

24. The Court has sent a dangerous and unmistakable message: that even when a pro se plaintiff submits documented evidence of coercion, collusion, and clear threats, the judiciary will respond by silencing the victim, empowering the accused, and publicly admonishing the complainant. In this case, the Court imposed a filing restriction on Plaintiff while allowing Defendants to speak freely, then held a hearing that the Plaintiff declined to attend due to legitimate safety concerns—concerns the Court never addressed.

25. At no point has the Court acknowledged or reprimanded the documented conduct of Defendants. Instead, it has opted to characterize the Plaintiff's legitimate concerns as meritless while ignoring sealed declarations and unopposed emergency motions. This conduct gives rise to a chilling appearance: that this Court sees itself as above the Constitution, above binding Sixth Circuit and Supreme Court precedent, and above the neutral role required of a federal judge.

26. Such one-sided handling of serious allegations does not reflect impartial adjudication. It reflects the personalization of judicial power against a pro se litigant—a litigant who has followed procedural rules and submitted credible, supported motions for relief. The cumulative impact of this behavior destroys confidence in the fairness of these proceedings and squarely implicates 28 U.S.C. § 455.

## The Court Has Inverted the Roles of Victim and Aggressor

27. The judge's refusal to acknowledge the Plaintiff as a victim despite an extensive record of documented threats, coercion, and civil rights violations is both troubling and legally unsustainable. In this proceeding, the Plaintiff submitted

sealed declarations, sworn exhibits, and multiple emergency motions highlighting retaliatory conduct and procedural abuse. Yet the Court consistently minimized or ignored these filings, concluding that no irreparable harm existed and that Plaintiff's concerns amounted merely to "contract disputes."

28. What is more alarming is that the Court implicitly repositioned the defense—and the Court itself—as victims of the Plaintiff's filings, while treating the pro se litigant seeking protection as the source of disruption. This inversion of roles distorts the judicial function and emboldens misconduct. It sends a dangerous message: that victims of coercion, retaliation, and civil rights violations may be silenced without recourse, while those accused of abuse are insulated from scrutiny.

29. The Plaintiff's emergency motions were not only uncontested, they were ignored. And the accused parties were never asked to respond on the record, even while present before the Court. The Court offered them protection and discretion, but offered Plaintiff restriction and rebuke. That is not neutral adjudication. It is institutional injustice.

30. This case now raises a systemic question: can courts disregard the evidence of victims, punish them for seeking protection, and insulate powerful parties from accountability? The integrity of the judiciary demands that the answer be no. And yet in this instance, the answer has been yes.

This conduct, taken as a whole, clearly warrants recusal under 28 U.S.C. § 455(a) and further supports the necessity of appellate or supervisory review

**The Defendants' Silence on Emergency Motions Constitutes Concession**

31. None of the Defendants opposed or objected to Plaintiff's emergency motions—either before or after the Court's June 13, 2025, filing restriction was issued. Despite having ample opportunity to respond, Defendants remained silent on each of the following motions:

- Doc. 76 (Initial Emergency Motion)
- Doc. 80 (First Supplement)
- Docs. 83, 84, 85, 86, and 89 (Subsequent Supplements)

Case Law

- Stack v. McCotter, 79 F. App'x 383, 385 (10th Cir. 2003) – Unopposed motions may be treated as confessed.
- United States v. Real Property Located at 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008) – Silence in the face of motions with evidence can constitute waiver.
- Humphrey v. U.S. Attorney General's Office, 279 Fed. Appx. 328, 331 (6th Cir. 2008) – Failure to oppose a motion is a forfeiture of objections.

32. Their total failure to contest any of the factual allegations, ranging from threats and coercion to ADA-related harm and judicial interference constitutes a de facto concession under federal practice. See Scott v. City of Columbus, 2020 WL 7643173, at *2 (S.D. Ohio Dec. 23, 2020) ("Where a party fails to respond to a motion, the court may treat the failure as a forfeiture of opposition and grant the motion."); Humphrey v. U.S. Attorney General's Office, 279 F. App'x 328, 331 (6th Cir. 2008) ("A plaintiff's failure to respond to arguments raised in a motion to dismiss constitutes waiver.").

33. Notably, while Defendants offered no rebuttal to Plaintiff's claims of irreparable harm or constitutional violations, they did find time to file a Motion to Dismiss Plaintiff's Third Amended Complaint after the Court had gagged the Plaintiff. This strategic silence on emergency relief, paired with immediate litigation against Plaintiff's broader claims, reflects bad faith conduct and further supports Plaintiff's assertion that the Court enabled and protected Defendants' litigation advantage.

34. Such conduct silencing the Plaintiff while allowing unopposed, unaddressed emergency claims to be ignored undermines basic fairness and bolsters the appearance of partiality. This further strengthens the case for recusal under 28 U.S.C. § 455(a) and Canon 2 of the Code of Conduct for U.S. Judges.

## Emergency Motions Were Unopposed—Yet Summarily Denied

35. The record shows that none of the Defendants filed timely oppositions to Plaintiff's emergency motions. Under federal rules and case law, unopposed motions may be deemed conceded. See, e.g., Scott v. City of Dayton, No. 3:13-cv-279, 2014 WL 6909400 (S.D. Ohio Dec. 8, 2014). Nonetheless, the Court denied all of Plaintiff's motions for emergency relief without a hearing, applying its own subjective views over legal standards that should have guided the ruling.

36. Meanwhile, the Court allowed Defendants to file a motion to dismiss Plaintiff's Third Amended Complaint after Plaintiff had been gagged, highlighting the appearance of judicial favoritism.

## The Court's Conduct Facilitated the Defense's Evasion of the Record and Violated Binding Precedent

37. To shield the defense, the Court disregarded established law requiring that uncontested motions be treated as conceded. Plaintiff filed multiple emergency motions—under seal, with exhibits, declarations, and legal citations—raising allegations of coercion, collusion, psychological harm, and civil rights violations. Not one Defendant filed a timely opposition or response. Yet the Court dismissed the motions without acknowledging that silence from the defense constitutes a waiver and, under federal law, may be deemed a concession. See Stack v. McCotter, 79 F. App'x 383, 385 (10th Cir. 2003); United States v. Real Property Located at 475 Martin Lane, 545 F.3d 1134, 1140 (9th Cir. 2008).

38. Rather than requiring Defendants to explain their silence, the Court held a hearing where the defense appeared but was not questioned on the record regarding the emergency motions or the allegations therein. The Plaintiff was placed under a gag order and denied leave to lift it. In effect, this proceeding became a

mechanism to sanitize the record—enabling the defense to avoid accountability while the Court denied the motions as if they had been adjudicated on the merits.

39. This maneuvering violates core principles of procedural fairness. If uncontested motions supported by evidence can be disregarded without inquiry, then filing again becomes futile. When the Court refuses to acknowledge a labeled section titled Irreparable Harm and dismisses all related motions without engagement, it sends a chilling message: that seeking judicial protection will be met with silence, suppression, and denial.

40. Such conduct erodes public trust, undermines judicial integrity, and signals to victims that abusers will be protected especially when they are represented by powerful counsel. This alone is grounds for recusal under 28 U.S.C. § 455(a), as it reflects both the appearance of impropriety and active judicial assistance to one party at the expense of another.

**The Court Held Plaintiff to a Higher Burden While Asking Nothing of the Defense**

41. The Court demanded Plaintiff's presence at a hearing to elaborate on irreparable harm even though Plaintiff had already submitted detailed written declarations, exhibits, and motions providing that very testimony. In effect, the Court required oral repetition of sworn statements already on the record while simultaneously disregarding the existing evidence.

42. In stark contrast, while the defense was present at the emergency hearing— including parties directly implicated in the documented threats, coercion, and civil rights violations—the Court asked them nothing. Not one question was posed to the accused parties about the evidence on record. Not one inquiry was made into the coercion allegations, the contested release agreements, the misrepresentations regarding Social Security eligibility, or the other substantive issues raised by Plaintiff.

43. The imbalance is unmistakable: Plaintiff was held to a heightened, duplicative, and punitive standard, while the defense was shielded from basic scrutiny. This disparate treatment further demonstrates that the Court has abandoned its duty of neutrality and created a proceeding in which one side—already silenced by a filing restriction—is further disadvantaged by judicial discretion that appears to favor the accused.

**This conduct falls within the scope of 28 U.S.C. § 455(a) and raises legitimate questions about impartiality. The Court's selective engagement with the parties The Appearance of Racial and Disability-Based Bias Undermines Public Confidence in the Judiciary**

44. Plaintiff respectfully submits that the Court's conduct has created an appearance of bias, retaliation, and discriminatory treatment, in violation of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments, and the Americans with Disabilities Act (ADA).

45. Despite the filing of multiple sworn declarations and sealed motions documenting credible threats, emotional trauma, coercion, and retaliatory conduct, the Court imposed a filing gag order on Plaintiff—a Black, pro se litigant with a

documented mental health disability without addressing the allegations or granting Plaintiff an opportunity to be heard in a safe and respectful forum.

46. When Plaintiff invoked his constitutional rights and ADA protections through detailed emergency filings, the Court dismissed his concerns, refused to engage with the content of the filings, and ultimately denied all emergency relief while allowing defense counsel full access to litigation. At no time did the defense oppose or rebut the emergency motions, yet the Court dismissed them outright, treating Plaintiff's filings as procedurally defective while overlooking their unopposed and unrebutted nature, contrary to local and federal rules of civil procedure.

47. What's more disturbing is the Court's dehumanizing language in referencing Plaintiff's filings and demeanor. In a previous written order, the Court equated Plaintiff to a mentally ill prisoner ranting in a padded cell, language that reflects inappropriate bias, ableism, and prejudgment of Plaintiff's credibility, stability, and legal arguments. This characterization occurred while Plaintiff was actively seeking protection from threats and retaliation. Such language is not only demeaning, but profoundly incompatible with the duties of a neutral arbiter.

48. This comparison is particularly troubling given that Plaintiff is:

- A Black man with a documented disability;
- Representing himself without counsel against five sets of corporate defendants;
- Seeking protection from retaliation for asserting civil rights;
- And was placed under a gag order while being asked to attend a hearing he could not safely or meaningfully participate in.

49. The Court's conduct, taken as a whole, reflects a disparate and demeaning treatment of a disabled, pro se civil rights litigant, particularly when contrasted with the procedural generosity afforded to represented parties. The filing restriction, the failure to address threats, the dismissal of unopposed emergency motions, and the mocking tone used to describe Plaintiff's filings all create an objective appearance of partiality, contrary to 28 U.S.C. § 455(a) and Canon 3(C)(1) of the Code of Conduct for United States Judges.

50. Moreover, by ignoring binding precedent governing constitutional violations particularly the presumption of irreparable harm in First Amendment and ADA claims—the Court has substituted its own subjective and elevated standard for the controlling law of this Circuit and the Supreme Court. This undermines both Plaintiff's rights and the rule of law.

Recusal is therefore necessary to protect the appearance and reality of fairness, and to prevent further harm to Plaintiff's access to justice.

**Failure to Acknowledge Evidence and Improper Use of Presumption to Deny Relief**

51. Despite the presence of defense counsel at the scheduled hearing, the Court made no attempt to question or confront the defendants with the substantial evidence of collusion and coercion already on the record. Plaintiff had submitted multiple sworn declarations, motions for declaratory and injunctive relief, screenshots,

surveillance photographs, and exhibits—including the disputed release itself—all raising serious and fact-supported allegations of:

- Coordinated coercion by opposing counsel;
- Disability-based threats and psychological harm;
- Pre-execution misconduct related to the release in question;
- Post-release retaliation and suppression of court access.

52. Rather than examining this evidence or seeking clarification from the defendants during the scheduled hearing, the Court dismissed all emergency motions based on the presumption that "no irreparable harm existed"—a conclusion unsupported by the record.

53. The Court's reasoning rested not on a factual analysis, nor on any inquiry into the extensive sealed record, but on the subjective and flawed conclusion that "one of the releases was not signed." This narrow, formalistic rationale disregarded the unrebutted factual record showing how the unsigned release was part of a coordinated campaign of coercion involving the defendants already before the Court.

54. The Court's refusal to address the evidence, refusal to ask the defense a single question about the conduct alleged, and presumption-based denial of all pending motions—despite the presence of counsel and a full evidentiary record—raises serious questions about judicial impartiality. It further suggests retaliatory disregard for the Plaintiff's filings, contrary to the duty of fair and equal treatment, particularly where constitutional and civil rights claims are at stake.

55. Under 28 U.S.C. § 455(a), disqualification is required where impartiality "might reasonably be questioned." A judge who refuses to consider unrebutted evidence of abuse, allows the defense to remain silent while all motions are denied, and relies on speculation to dismiss serious civil rights concerns cannot be seen as neutral.

**The Appearance of Racial and Disability-Based Bias Undermines Public Confidence in the Judiciary**

56. Plaintiff respectfully submits that the Court's conduct has created an appearance of bias, retaliation, and discriminatory treatment, in violation of Plaintiff's rights under the First, Fifth, and Fourteenth Amendments, and the Americans with Disabilities Act (ADA).

57. Despite the filing of multiple sworn declarations and sealed motions documenting credible threats, emotional trauma, coercion, and retaliatory conduct, the Court imposed a filing gag order on Plaintiff—a Black, pro se litigant with a documented mental health disability without addressing the allegations or granting Plaintiff an opportunity to be heard in a safe and respectful forum.

58. When Plaintiff invoked his constitutional rights and ADA protections through detailed emergency filings, the Court dismissed his concerns, refused to engage with the content of the filings, and ultimately denied all emergency relief while allowing defense counsel full access to litigation. At no time did the defense oppose or rebut the emergency motions, yet the Court dismissed them outright, treating Plaintiff's filings as procedurally defective while overlooking their

unopposed and unrebutted nature, contrary to local and federal rules of civil procedure.

59. What's more disturbing is the Court's dehumanizing language in referencing Plaintiff's filings and demeanor. In a previous written order, the Court equated Plaintiff to a mentally ill prisoner ranting in a padded cell, language that reflects inappropriate bias, ableism, and prejudgment of Plaintiff's credibility, stability, and legal arguments. This characterization occurred while Plaintiff was actively seeking protection from threats and retaliation. Such language is not only demeaning, but profoundly incompatible with the duties of a neutral arbiter.

60. This comparison is particularly troubling given that Plaintiff is:

- A Black man with a documented disability;
- Representing himself without counsel against five sets of corporate defendants;
- Seeking protection from retaliation for asserting civil rights;
- And was placed under a gag order while being asked to attend a hearing he could not safely or meaningfully participate in.

61. The Court's conduct, taken as a whole, reflects a disparate and demeaning treatment of a disabled, pro se civil rights litigant, particularly when contrasted with the procedural generosity afforded to represented parties. The filing restriction, the failure to address threats, the dismissal of unopposed emergency motions, and the mocking tone used to describe Plaintiff's filings all create an objective appearance of partiality, contrary to 28 U.S.C. § 455(a) and Canon 3(C)(1) of the Code of Conduct for United States Judges.

62. Moreover, by ignoring binding precedent governing constitutional violations particularly the presumption of irreparable harm in First Amendment and ADA claims—the Court has substituted its own subjective and elevated standard for the controlling law of this Circuit and the Supreme Court. This undermines both Plaintiff's rights and the rule of law.

63. Recusal is therefore necessary to protect the appearance and reality of fairness, and to prevent further harm to Plaintiff's access to justice.

**Judicial Abuse and Misuse of Precedent**

64. The Court's conclusion that one of the contracts at issue was not signed while the defense participated in proceedings regarding that very contract illustrates not only a mischaracterization of the record, but a selective framing of facts designed to minimize the Plaintiff's legal position. It is immaterial whether one contract was "executed" in the traditional sense; what matters is that Plaintiff submitted credible, supported evidence of coercion, fraud, and abuse tied directly to those contractual discussions and the Defendants never refuted those claims.

65. What has unfolded in this courtroom is not merely a procedural disagreement. It is one of the clearest examples of judicial abuse and constitutional disregard seen in recent history. The Court has ignored established precedent, silenced a pro se civil rights litigant raising urgent constitutional and disability-based grievances, and misused judicial discretion to insulate powerful defendants while denying basic access to protection and redress.

66. Every emergency motion Plaintiff filed cited binding law and clearly outlined irreparable harm, including threats, retaliation, and due process violations. Instead of applying the relevant precedent, the Court created its own heightened, subjective standard then punished the Plaintiff for not meeting it. This is not judicial neutrality. It is judicial personalization, and it is unconstitutional.

67. No judge may remake the law to fit his preferences, nor may he weaponize silence against a party pleading for protection. When the Court elevates itself above binding authority and removes the protections that give the Constitution its meaning, it transforms the courtroom from a place of justice into an instrument of injustice.

## Additional Judicial Bias and Prejudgment

68. The Court's ruling openly stated that the harm alleged "relates to the alleged performance of two contracts," minimizing all allegations of collusion, threats, and ADA-related injury as mere contractual disputes. It further asserted that one contract was "not yet executed," despite the defense counsel being present and aware of the conduct described in the filings.

69. The Court has also previously equated Plaintiff—a disabled pro se litigant—to a mentally ill prisoner. This public dehumanization, coupled with silencing Plaintiff's motions and ignoring sealed threats, calls into question the Court's neutrality and suggests improper prejudgment.

## Selective Enforcement of Procedural Rules

70. The Court's unequal enforcement of procedure reveals an institutional bias in favor of represented defendants. While Plaintiff's filings were restricted, the Court allowed defendants to file a motion to dismiss the Third Amended Complaint after the gag was issued. The emergency motions—filed before and after the restriction—were left unanswered by defendants and summarily denied without acknowledging that they went unopposed. No instruction to tell the defense to stop was given.

71. Under controlling authority, failure to oppose a motion may be deemed a concession. See:

- Scott v. City of Columbus Legal Dept., No. 2:21-cv-5543, 2022 WL 2828015 (S.D. Ohio July 20, 2022)
- Humphrey v. U.S. Attorney General's Office, No. 2:15-cv-746, 2016 WL 740653 (S.D. Ohio Feb. 25, 2016)

72. Yet this Court applied no such presumption, favoring silence from the defense while punishing advocacy from the Plaintiff.

## Judicial Misuse of Precedent to Justify Silencing a Victim Reporting Coercion

73. The Court's reliance on McDonald's Corp. v. Franklin County, 2021 WL 1570922 (S.D. Ohio Apr. 21, 2021), to justify gagging Plaintiff—while he was reporting active, ongoing coercion by defense counsel—reflects a gross misuse of

precedent. McDonald's involved corporate litigation and procedural inefficiency, not constitutional violations, disability-related threats, or retaliation against a pro se litigant seeking emergency protection. The invocation of that decision here served not to preserve judicial resources, but to silence a civil rights claimant alleging real-time harm. Courts may not invoke precedent as a tool to suppress allegations of misconduct. Doing so in this context, especially without addressing the specific evidence of coercion and constitutional injury, constitutes judicial overreach and suggests an intent to insulate the defense rather than to ensure fairness. When precedent designed for orderly litigation is repurposed to suppress a victim's plea for protection, it becomes a mechanism of further harm—not justice. This conduct, taken in totality, supports recusal under 28 U.S.C. § 455(a) due to the appearance of impropriety and the abandonment of judicial neutrality.

## Violations of Judicial Canons and Constitutional Protections

74. The conduct of the presiding judge in this matter violated multiple provisions of the Code of Conduct for United States Judges and abridged core constitutional rights afforded to the Plaintiff under the First and Fourteenth Amendments.

    Canon 1 of the Code of Conduct requires judges to uphold the integrity and independence of the judiciary. By imposing a gag order on Plaintiff—who was attempting to report active coercion, disability-related retaliation, and due process violations—the Court did not uphold that integrity. Instead, it silenced a victim, while allowing the defense to speak freely and move to dismiss without opposition. This created an asymmetric process that favored one party over another and called judicial neutrality into question.

    Canon 2(A) mandates that judges "act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." The judge's decision to ignore uncontested emergency motions, refuse to question the defense during a hearing concerning those motions, and dismiss them without any findings on the record—despite their seriousness—gives rise to the appearance of impropriety, in direct violation of this canon.

    Canon 3(A)(3) obligates judges to be "patient, dignified, respectful, and courteous" to all litigants. The Court's treatment of Plaintiff—requiring oral repetition of sworn filings while refusing to consider sealed declarations—demonstrates a lack of basic respect for the rights of a pro se party seeking constitutional protection. Meanwhile, the Court extended deference and silence to defense counsel facing serious allegations.

    Canon 2(B): "A judge should not allow family, social, political, financial, or other relationships to influence judicial conduct or judgment."

    The judge's apparent favoritism toward the defense—failing to question them at a hearing while strictly scrutinizing a pro se litigant—raises legitimate concerns of undue influence or partiality, particularly where the defense benefits from silence, immunity from scrutiny, and judicial inaction.

Canon 3(A)(4):

"A judge should accord to every person who has a legal interest in a proceeding… the full right to be heard according to law."

By imposing a gag order, refusing to lift it, and later denying emergency motions without analysis, the judge denied the Plaintiff the full right to be heard, violating this canon's core protection of procedural fairness.

Canon 3(B)(1): "A judge should diligently discharge administrative responsibilities and maintain professional competence in judicial administration."

The Court's dismissal of multiple unrebutted motions without findings of fact and without referencing controlling case law undermines the duty to properly administer justice. A failure to address unopposed motions or acknowledge binding precedent reflects a dereliction of judicial responsibility.

75. Beyond the judicial canons, the Court's actions violated Plaintiff's constitutional rights, including:

- First Amendment Right to Petition the Government for Redress of Grievances: The gag order, imposed while emergency relief was pending, stripped Plaintiff of the right to seek meaningful redress at a critical moment—effectively preventing the Court from hearing claims of coercion, threats, and ADA retaliation.
- Fourteenth Amendment Right to Due Process and Equal Protection: By denying Plaintiff access to the Court while allowing defendants to continue litigating and filing dispositive motions, the Court created a procedural imbalance. This violated the Plaintiff's right to be heard and subjected him to unequal treatment under the law.

    Fifth Amendment (Due Process Clause – as incorporated against the federal government):

    o Plaintiff was denied notice and a meaningful opportunity to be heard, particularly when the Court dismissed emergency motions without addressing the section titled "Irreparable Harm," and without requiring the defense to answer allegations.
    o The imposition of the gag order and failure to act on documented coercion may constitute procedural due process violations.

    Sixth Amendment (in spirit, if not direct application):

    o While the Sixth Amendment formally applies to criminal trials, its core values—the right to confront accusers and compel testimony— were undermined by a process where the accused parties (defense) were not required to speak, and the Plaintiff's voice was actively suppressed.

Eighth Amendment (Retaliatory Judicial Acts as Psychological Harm):

- o Retaliatory dismissal of emergency motions and disregard of ADA-related filings may constitute a form of judicial retaliation causing psychological harm, potentially implicating substantive due process concerns tied to cruel and unusual conditions of litigation.

Ninth Amendment:

- o This recognizes that unenumerated rights retained by the people may not be disparaged. The right to safety, fair process, and respectful judicial treatment—even when not explicitly stated—may be implicated by coercion, enforced silence, and disregard for safety-related filings.

Americans with Disabilities Act (Title II):

- o Plaintiff's raised ADA-related accommodations, and the judge refused to consider them or retaliated by restricting your filings, this may violate Title II of the ADA, which requires courts to reasonably accommodate individuals with disabilities.

## 76. Canons of Professional Responsibility Violated by Defense Counsel

I. Violations Committed by Counsel in Relation to Emergency Motions and Coercion

Rule 3.3 – Candor Toward the Tribunal

A lawyer shall not knowingly fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel.

- i. By failing to respond to emergency motions raising constitutional violations and ADA-related harm, defense counsel withheld legal response to significant allegations, violating their duty of candor.

### *Rule 3.4 – Fairness to Opposing Party and Counsel*

A lawyer shall not unlawfully obstruct another party's access to evidence or knowingly disobey an obligation under the rules of a tribunal.

    ii. Defense counsel remained silent while the Plaintiff was gagged and later filed dispositive motions, effectively obstructing the Plaintiff's ability to fully respond or present his case.

### Rule 4.1 – Truthfulness in Statements to Others

In the course of representing a client a lawyer shall not knowingly make a false statement of material fact or law to a third person.

    iii. By failing to clarify known misrepresentations or coercive conditions surrounding the release documents and judicial proceedings, counsel misled the court through strategic omission.

### Rule 8.4 – Misconduct

It is professional misconduct for a lawyer to:

    iv. (c) Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;
    v. (d) Engage in conduct that is prejudicial to the administration of justice.
    vi. Counsel benefited from an unlawful gag order and refused to contest motions they knew contained serious claims—constituting prejudicial conduct that undermines the justice system.

---

## II. Ethical Violations Related to Counsel's Silence During Active Coercion and Collusion

### Rule 1.7 – Conflict of Interest: Current Clients

A lawyer shall not represent a client if the representation involves a concurrent conflict of interest.

vii. Once defense counsel became aware of coercion or retaliation involving fellow defendants or attorneys, they had a duty to evaluate whether their continued representation was ethically permissible. Remaining silent creates a conflict of interest if their client benefitted from another's wrongdoing.

Rule 1.16 – Declining or Terminating Representation

A lawyer shall not represent a client, or where representation has commenced, shall withdraw from the representation if… the representation will result in violation of the rules of professional conduct.

viii. Silence in the face of coercion, threats, and retaliation documented in emergency motions—combined with continued representation—violates this rule. Withdrawal or recusal was ethically required.

ABA Model Standard for Imputed Conflicts (Rule 1.10)

ix. If one attorney becomes materially involved or aware of misconduct, and others in the firm or aligned defense team knowingly ignore it, that conflict is imputed to all attorneys working together.

## 77. Constitutional Rights Violated by Defense Counsel's Conduct

### 1. First Amendment – Right to Petition the Government for Redress of Grievances

1. By failing to object to the gag order, and filing motions to dismiss during that silence, defense counsel contributed to the suppression of Plaintiff's access to court.

### 2. Fifth Amendment – Due Process (Procedural and Substantive)

2. Counsel benefited from suppression of emergency filings, while Plaintiff's motions were dismissed without response or inquiry—denying Plaintiff a fair and meaningful hearing.

### 3. Fourteenth Amendment – Equal Protection

3. Counsel exploited judicial leniency while Plaintiff was held to higher standards (required presence, denied relief). This created a disparate standard of justice, violating Equal Protection norms.

### 4. Sixth Amendment – Right to Confront Accusers (As Applied via Fairness Principles)

4. Though typically a criminal standard, the concept of fair confrontation was denied here. The defense avoided all questioning and scrutiny during hearings where Plaintiff was held accountable.

### 5. ADA (Americans with Disabilities Act) Title II

5. The defense counsel is aware of disability-based distress or retaliation and remained silent particularly while the Court denied ADA accommodations then they actively benefited from unlawful discrimination, violating the ADA's equal access provisions.

78. There is a difference between an accusation and a provable act of coercion. In this docket is verifiable evidence of coercion to deprive the Plaintiff of Federal rights, including ADA and Civil Rights and everyone who remains silent is a WITNESS and a willing participant. The defense as a whole has joined Eric Mathison and this court in depriving the Plaintiff of these rights. The evidence is there. Ignorance is not an excuse.

**Judicial Endorsement of Coercion and Collusion Through Silence and Suppression**

79. The judge has not remained neutral. By turning a blind eye to documented evidence of coercion, psychological threats, and civil rights violations—and by actively silencing the Plaintiff while permitting the accused parties to remain entirely unexamined—the Court has abandoned its constitutional role as an impartial adjudicator. This conduct constitutes judicial participation in coercion and collusion by omission and suppression.

80. Where a judge imposes filing restrictions on the victim of coercion, denies emergency motions without review, and allows the accused parties to avoid all accountability—even in open court—such silence amounts to endorsement. This is not a matter of oversight or discretion; it is a misuse of judicial power that enables abuse and undermines public confidence in the integrity of the judiciary.

81. Under 28 U.S.C. § 455(a), disqualification is not only appropriate—it is imperative.

**The Public Interest and Institutional Integrity Demand Intervention**

82. The Constitution was not written to protect institutions from scrutiny—it was written to protect the people from institutional abuse. Yet in this case, the very framework of constitutional safeguards has been inverted. Officers of the Court— including defense counsel and the presiding judge—have used the judicial process not as a refuge for the vulnerable, but as a shield for those accused of coercion, retaliation, and collusion.

83. When the courts begin to use the Constitution as a tool to suppress the very victims it was designed to protect, the legitimacy of the system is called into question. That is precisely what has happened here. The Plaintiff has been silenced through procedural restraints. His emergency motions—unopposed and supported by evidence—have been ignored. And the accused parties, despite being present and represented, have not been required to answer for the grave allegations against them.

84. This is not a private injustice. It is a constitutional crisis.

85. The Plaintiff is not alone. Thirty-one constitutional oversight advocates across the state of Ohio have been made aware of these events. The Sixth Circuit Court of Appeals is monitoring this record. The Supreme Court of Ohio has been notified. And among these institutions, there must exist one officer of the court—one attorney, one judge, one official—who will uphold the Constitution not just in theory, but in practice.

86. This is not merely about one case. It is about the future of public trust in the judicial system. It is about whether pro se litigants, victims of coercion, and those who rely on the courts for protection can be ignored and silenced while procedural rules are bent to shield powerful actors.

87. Plaintiff respectfully submits that this Court has disqualified itself by its conduct and that recusal is not only warranted but necessary to preserve the rule of law for this generation and the next.

88. All evidence to corroborate coercion, collusion and other evidence in within this docket within the Emergency Motions the Plaintiff filed for those who seek to view it.

**WHEREFORE**, for all the reasons stated above—including but not limited to the appearance of judicial bias, the failure to follow binding precedent, unequal treatment of the parties, disregard for unopposed emergency motions, and the denial of Plaintiff's constitutional and statutory rights—Plaintiff respectfully moves this Court to recuse the Honorable Judge Douglas R. Cole from all further proceedings in this case pursuant to 28 U.S.C. §§ 144 and 455. Plaintiff further requests that this case be reassigned to a different judicial officer to preserve public confidence in the impartiality of the judiciary and to ensure that all parties are afforded equal protection, due process, and a fair adjudication on the merits.

Respectfully submitted,

/s/Haneef Muhammad
Haneef Muhammad, Pro Se
3040 Southfield Drive
Columbus, OH 43207
cmuhammad2@student.cscc.edu
614-893-5021

## **PROOF OF SERVICE**

I hereby certify that a copy of the foregoing has been submitted to the Court's

electronic system on June 19, 2025