**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

HANEEF MUHAMMAD,

      Plaintiff,

    v.

GAP INC., et al.,

      Defendants.

Case No. 2:24-cv-3676

JUDGE DOUGLAS R. COLE
Magistrate Judge Vascura

### AMENDED OPINION AND ORDER[*]

The Court recently set a telephonic status conference to discuss the status of this case with pro se Plaintiff Haneef Muhammad and counsel for the Defendants who are still parties to this action. (11/7/2025 Notice). But despite the Court's express (and at this point oft-repeated) warning that Muhammad's failure to appear at a scheduled hearing could result in "sanctions up to and including monetary sanctions and/or dismissal of this case with prejudice," (*id.*), Muhammad once again declined to show, (11/19/25 Min. Entry). Because Muhammad's failure to appear marks the culmination of a long train of litigation misconduct, the Court takes three steps. First, it **DISMISSES** this case **WITHOUT PREJUDICE** (but with any re-filing subject to the filing restrictions set forth below). Second, the Court **ORDERS** Muhammad to compensate the Defendants (at least to some extent) for attorneys' fees and costs

---

[*] The Court's December 9, 2025, Opinion and Order (Doc. 135) dismissed this action with prejudice. The Court instead intended to dismiss the action without prejudice, but subject to certain filing restrictions should Plaintiff seek to refile. The Court issues this amended opinion solely to correct that error. The Court apologizes for any confusion it caused.

incurred in connection with the November 19, 2025, telephonic status conference, as well as the July 16, 2025, show cause hearing, neither of which Muhammad attended. (7/16/25 Min. Entry; 11/19/25 Min. Entry). Finally, the Court **DESIGNATES** Muhammad a vexatious litigant, imposing a three-part filing restriction further described below. The Court takes none of these steps lightly, but finds each is necessary to protect the litigation process.[1]

---

[1] As further described below, while the Court was in the process of finalizing this Order, Muhammad filed several new motions. One of those was a renewed Motion for Recusal (Doc. 127). When a party seeks recusal, a court, as a general matter, should respond to that motion before moving forward with other pending matters in the case. So that is what the Court does here. But having reviewed the motion, the Court finds it is not well-taken, and accordingly the Court **DENIES** the motion. Contrary to Muhammad's contentions, this Court did not "reopen" a closed case. (*Id.* at #1753). At the time the Court dismissed the Amended Complaint without prejudice, the Court specifically noted that there were motions outstanding to further amend the Complaint (along with a host of other motions). (*See* 7/3/25 Op. & Order, Doc. 114, #1627). So, while the Court dismissed *the Complaint*, it did not dismiss *the action*. Indeed, the Court expressly observed that it was "hold[ing the other motions] in abeyance for now, pending further exploration of some apparent errors and omissions in Muhammad's filings," a reference to what appeared to be hallucinated case citations. (*Id.* at #1643). Muhammad also seeks recusal on the ground that the undersigned has "personally participated in these events," and is a "material witness." (Doc. 127, #1757). The "events" to which Muhammad refers are events that occurred in the courtroom or during telephonic status conferences in connection with the undersigned's handling of this matter. Of course, a judge does not become a material witness to an action based on presiding over it. The only other aspect of the motion that bears mention is Muhammad's claim that the Court is biased against him. (*Id.* at #1757–58). As was the case with his previous motion, the "evidence" of bias relates to actions—e.g., "issu[ing] text-only docket entries," "attempt[ing] to compel Plaintiff's appearance," "monitoring filings," and "taking judicial action," (*id.* at #1757)—that are standard judicial activities. Relatedly, the Court is not entirely clear what Muhammad means when he refers to "informal or off-record proceedings." (*Id.*). Suffice to say, Muhammad was invited (indeed ordered) to be present at all hearings on this matter, and when he did not show, the Court limited its discussion with the parties who did appear to addressing the fact of Muhammad's absence. In short, as was the case when the Court denied Muhammad's previous motion seeking recusal, the Court has no extra-judicial information about Muhammad, nor is it biased against him in any way. Accordingly, there is no basis for recusal.

1. Start with the terminating sanction. It is well-settled that "[a] district court has the inherent power to sanction a party when that party exhibits bad faith." *Bradley J. Delp Revocable Tr. Dated January 8, 1992 v. MSJMR 2008 Irrevocable Tr. Dated December 31, 2008*, 665 F. App'x 514, 520 (6th Cir. 2016) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–50 (1991)). Although "outright dismissal" of a lawsuit is a "particularly severe sanction," it is nonetheless "within the court's discretion." *Chambers*, 501 U.S. at 45. And that includes cases brought by pro se litigants, as such litigants, "regardless of their level of legal sophistication, may not disregard the law or engage in abusive conduct." *Jamar-Mamon X v. Univ. of Cincinnati*, 758 F. Supp. 3d 756, 764 (S.D. Ohio 2024).

The Sixth Circuit has identified four factors to guide a district court's decision to impose a terminating sanction: "(1) whether the party's conduct was due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *Bradley*, 665 F. App'x at 520–21 (cleaned up). While no single factor is dispositive, "a case is properly dismissed by the district court where there is a clear record of delay or contumacious conduct." *Knoll v. Am. Tel. & Tel. Co.*, 176 F.3d 359, 363 (6th Cir. 1999) (citation omitted). "Contumacious" in this context means "perverse in resisting authority" and "stubbornly disobedient." *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731, 737 (6th Cir. 2008) (citation omitted). "If dismissal [is] warranted by contumacious

3

conduct, the importance of the remaining three factors fades in the face of this conclusion." *Bradley*, 665 F. App'x at 521 (quoting *Knoll*, 176 F.3d at 366) (cleaned up).

The record here abounds with evidence of Muhammad's stubborn disobedience and otherwise contumacious conduct. As the Court has detailed elsewhere (*see* Doc. 114, #1627–33 (laying out this case's procedural history up to the Court's July 3, 2025, Opinion & Order); Doc. 124, #1740–42 (summarizing the procedural history up to the Court's September 29, 2025, Order)), Muhammad has filed dozens of frivolous motions, admitted to putting AI-hallucinated case law before the Court, (*see* Doc. 120, #1701), and repeatedly failed to attend proceedings, including when the purpose of those proceedings was to discuss emergency relief that *Muhammad himself* requested.

That last point—his refusal to appear for hearings—bears emphasis. Issues on this front started on June 18, 2025, when the Court held a telephonic status conference to discuss the emergency relief that Muhammad had requested in some of his many motions. (*See* 6/18/25 Min. & Order). But despite that it was Muhammad who had declared the need for emergency relief, he declined to appear. (*Id.*). Instead, he filed what he styled a "Declaration of Non-Appearance" (Doc. 92), in which he explained that he would not appear for the *telephonic* status conference out of fears for his personal safety. How appearance at a telephonic status conference could put his safety at risk, he did not explain.

4

Shortly thereafter, in the Court's July 3, 2025, Opinion and Order, the Court set a July 16, 2025, show cause hearing. The Court explained that the purpose of that hearing would be to discuss what appeared to be AI-hallucinated case citations in various of Muhammad's filings. (Doc. 114, #1627). And the Court also expressly warned Muhammad that, in response to Muhammad's apparent reliance on hallucinated case citations, the Court was "considering sanctions up to and including denial of his outstanding motions, dismissal of this action, designating Muhammad a vexatious litigant (thereby subjecting him to pre-filing restrictions), revocation of his right to proceed pro se in this matter, monetary sanctions, or other sanctions, as appropriate." (*Id.*). Muhammad responded to the Court setting an in-person hearing by asking for permission to attend the hearing remotely. (*See* Doc. 117, #1679). But the Court denied that request. (7/10/25 Not. Order). Moreover, in light of his earlier failure to appear at the telephonic status conference, the Court specifically warned Muhammad that "failing to appear at the hearing" "may result in him being deemed in contempt of court." (*Id.*). Then, the day of the scheduled hearing, Muhammad filed a continuance request, (Doc. 120), which the Court denied, (7/16/25 Not. Order). But Muhammad nonetheless declined to appear. (7/16/25 Min. Entry).

The Court did not address his failure to appear at the time. That was because Muhammad had by that point filed a Notice of Appeal to the Sixth Circuit, (Doc. 116), rendering the Court uncertain of its jurisdiction. So the Court elected to enter a Notation Order staying the case pending resolution of that appeal. (7/16/25 Not. Order). In that Order, though, the Court specifically advised Muhammad that his

5

failure to appear at the hearing that day put him in "violation of three separate Orders requiring him to appear at the Show Cause Hearing." (*Id.*). And the Court again warned Muhammad that sanctions would be on the table once the case returned to this Court, including "monetary sanctions, dismissal, revocation of his right to proceed pro se in this Court, and/or a vexatious litigator determination." (*Id.*).

Shortly thereafter, the Sixth Circuit dismissed Muhammad's appeal for lack of jurisdiction. (Doc. 123). With the case back before this Court, the Court began by denying Muhammad's Motion to Recuse. (Doc. 124). The Court then set the matter for a telephonic status conference on October 9, 2025. (10/1/25 Am. Notice). Given his history of non-appearance, the Court again warned Muhammad that "[f]ailure to appear will result in potential sanctions up to and including monetary sanctions and/or dismissal of this case with prejudice." (*Id.*). But before the appointed day, the Court learned that Muhammad had submitted a petition for rehearing en banc in the Sixth Circuit on the jurisdictional dismissal. (*See* 10/9/5 Not. Order). Again, out of an abundance of caution, and not wanting to interfere with appellate jurisdiction, the Court stayed the case pending disposition of that petition. (*Id.*). But once the Sixth Circuit declined the petition, the Court reset the telephonic status conference for November 19, 2025. And, once again, the Court specifically warned Muhammad that "[f]ailure to appear will result in potential sanctions up to and including monetary sanctions and/or dismissal of this case with prejudice." (11/7/25 Notice).

Yet somehow, despite this clear and oft-repeated warning, Muhammad opted not to show. (11/19/25 Min. Entry). Nor did he contact chambers to explain his

6

absence. His failure to appear, which is simply the last in a long string of "stubbornly disobedient" behavior, is the final straw. *Schafer*, 529 F.3d at 737. Moreover, while his repeated failure to appear is enough, in and of itself, to warrant dismissal, the Court would be remiss if it failed to mention his (apparently ongoing) use of AI resulting in fabricated citations.[2]

The Court's finding that Muhammad has engaged in contumacious conduct means that the Court need not even consider the three remaining factors governing dismissal—prejudice to the opposing party, warnings, and the consideration of less-drastic sanctions. *Bradley*, 665 F. App'x at 521. But even were that not so, the Court notes that each of those factors also favors dismissal. To start, Muhammad's conduct has prejudiced the Defendants by needlessly delaying this litigation and increasing the Defendants' expense. *Cf. Carpenter v. City of Flint*, 723 F.3d 700, 707 (6th Cir. 2013) (quoting *Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) ("A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is required to waste time, money, and effort in pursuit of cooperation which the plaintiff was legally obligated to provide." (cleaned up)). When the Court sets a hearing, clients pay their attorneys to be present. When one party refuses to show, that money is wasted. Turning to the topic of previous warnings, as explained above, the Court has

---

[2] One of his most recent filings, *see* infra note 4, references *United States v. Holloway*, 939 F.3d 1088 (10th Cir. 2019), which he cites as a Sixth Circuit case and argues as support for his belief that various of the Court's actions are "void" for lack of jurisdiction. (Doc. 127, #1757). In fact, *Holloway*, a Tenth Circuit case, has nothing to do with the Court's jurisdiction over this matter. Muhammad's mis-citation to that case suggests to the Court that Muhammad is once again relying on AI tools to craft his arguments. At the very least, it shows he did not bother to confirm the accuracy of either the citation form or the contents of the case.

7

repeatedly warned Muhammad of the consequences that will follow from his bad-faith litigation tactics. And those warnings have all informed Muhammad of the possibility of lesser sanctions. Indeed, one of the purposes of the July show cause hearing and the most recent telephonic status conference was to discuss the issue of appropriate sanctions. But despite those warnings and threats of sanctions, Muhammad simply refuses to participate. Litigation cannot proceed if a party repeatedly refuses to appear in person or telephonically when summoned. Accordingly, the Court concludes that only dismissal will suffice.

That said, while the Court has already found that the merits of his claims seem dubious, (*see generally* 7/3/25 Op. and Order, Doc. 114), the Court's real concern is the *manner* in which Muhammad is pursuing his claims. Thus the Court concludes that it will dismiss the action without prejudice, meaning that Muhammad could seek to re-plead his case, but that any such filing will be subject to the filing restrictions set forth below. In essence, Muhammad has forfeited his right to pursue his allegations in this action pro se, at least in an unfettered manner, and must instead seek advice from an attorney should he wish to proceed.

2. Separately, but for much the same reasons, the Court finds that monetary sanctions are appropriate. *See Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *3–4 (6th Cir. June 10, 2008) (affirming district court's use of inherent authority to impose various sanctions, including monetary sanctions, based on a litigant's repeated bad-faith failure to obey court orders). As noted, when one party to a suit declines to appear at the Court-appointed time, all other parties who have

8

appeared incur an economic harm. Attorneys, and especially attorneys on the defendants' side of a case, typically bill by the hour. Time, as they say, is money. So, when Muhammad did not appear at the hearing in July, and the telephonic status conference this month (or the telephonic status conference in June, for that matter), the meter nonetheless was running for all of the Defendants in this action who did appear as the Court had ordered. Accordingly, the Court holds that Muhammad must pay $600 to each group of defendants represented by separate counsel as compensation for his failure to appear at the July 16, 2025, show cause hearing, and an additional $150 for the November 19, 2025, telephonic status conference (representing the Court's admittedly rough estimate of the cost of an hour and one-quarter hour of time, undoubtedly a low estimate of the economic harm the parties actually incurred) (7/16/25 Min. Entry; 11/19/25 Min. Entry). Four separate groups of counsel representing the various Defendants appeared at both hearings.[3] Thus, at a rate of $750 per separately represented group, that totals $3,000. But while Muhammad has caused that harm (and likely far more) by his failure to appear, the Court is also cognizant of Muhammad's status as an individual pro se Plaintiff squaring off against better-funded corporate defendants. Thus, the Court elects to reduce the (already-reduced) amount by an additional 50%, for an amount of $375 per group or $1,500 total. The point is simply that, as a frequent litigator, Muhammad

---

[3] Attorney Murch represents Gap Inc. and GPS Consumer Direct Inc.; Attorney Eberly represents Seth Vogelstein and Disability Occupational Consultants; Attorneys DeRoos and Haskins represent Verisk Analytics; and Attorneys Mathisen and Ottinger represent the Hartford. (*See* 7/16/25 Min. Entry; 11/19/25 Min. Entry).

9

must come to terms with the fact that his unilateral actions in declining to appear for court-ordered hearings have real-world financial consequences for other parties. The Court's hope is that, by forcing him to bear some small part of those costs, he may take them more fully into account in his future behavior.

      3.      Finally, the Court designates Muhammad a vexatious litigant. A district court "has inherent authority to issue an injunctive order to prevent prolific litigants from filing harassing and vexatious pleadings." *Clemons v. DeWine*, No. 19-3033, 2019 WL 7567197, at *3 (6th Cir. May 1, 2019) (first citing *Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998); and then citing *Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987)). The Sixth Circuit adheres to a four-part test for the propriety of such an order, which considers whether the district court (1) provided notice to the plaintiff; (2) created an adequate record for review, including a "listing of all the cases and motions that led the district court to conclude that a vexatious litigant order was needed;" (3) made "substantive findings as to the frivolous and harassing nature of the litigant's actions"; and (4) narrowly tailored the order "to closely fit the specific vice encountered." *Id.* (citing *De Long v. Hennessey*, 912 F.2d 1144, 1147–48 (9th Cir. 1990)).

Here, the Court has repeatedly warned Muhammad of the possibility of a vexatious-litigant designation. (*See* Doc. 114, #1627; 7/16/25 Min. Entry). Beyond that, the Court specifically finds that Muhammad's pattern of submitting various filings[4] and then failing to appear at proceedings held in connection with those filings

---

[4] The Court denied seven such filings in its June 18, 2025, Minutes and Order alone. (6/18/25 Min. Entry). At the time the Court started drafting this Order, Muhammad had 18 motions

10

significantly "tax[es] judicial resources," and therefore amounts to frivolous harassment. *Clemons*, 2019 WL 7567197, at *3. His reliance on AI-generated and hallucinated citations only adds to the scope of that harm. While the Court does not have a full count of the motions that included such citations, it has identified at least two in which Muhammad has conceded that such citations were present. (*See* Doc. 96; Doc. 111; Doc. 120, #1701 (conceding that these filings include AI-hallucinated

---

pending. (*See* Docs. 65, 66, 67, 68, 69, 70, 72, 75, 94, 95, 97, 99, 100, 101, 102, 103, 105, 110). For the sake of providing a list of all the filings that lead the Court to conclude that a vexatious-litigant order is needed, *see Clemons*, 2019 WL 7567197, at *3, the Court notes that in the three-month period between May and July 2025, Muhammad submitted a total of 45 filings, (*see* Docs. 65, 66, 67, 68, 69, 70, 71, 72, 75, 76, 77, 78, 79, 80, 81, 83, 84, 85, 86, 88, 89, 92, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 109, 110, 111, 112, 115, 116, 117, 118, 120, 121). Many of these filings included a slew of additional attachments. (*See, e.g.*, Doc. 101 (including 17 separate attachments along with the principal document)). Indeed, many of the filings occurred in the same one- or two-day period. For example, between June 10 and 11, Muhammad submitted a total of ten filings, seeking everything from emergency relief to sanctions. (*See* Docs. 75, 76, 77, 78, 79, 80, 81, 83, 84, 85). All of that is sufficient to support a filing restriction. *See Qiu v. Scott Cnty., Ky. Bd. of Educ.*, No. 23-5842, 2024 WL 4257198, at *2 (6th Cir. Apr. 8, 2024) (upholding pre-filing restriction on "additional motions or pleadings" for a litigant deemed vexatious based on "nine pending motions" that "contained lengthy allegations" and "consistently failed to cite with particularity the legal foundation" for the relief sought).

Muhammad's conduct as the Court was preparing to publish this Order bolsters this conclusion. On November 24, 2025, Muhammad submitted six new filings: (1) a *new* Motion to Recuse (Doc. 127); (2) a document purporting to "provide[] Judicial Notice" that "Attorney Sam Ottinger is a material fact witness under Ohio Rule of Professional Conduct 3.7" (Doc. 128, #1760); (3) a so-called "Notice of Structural Irregularity and Request for Administrative Review" (Doc. 129); (4) a "Motion to Stay All Proceedings Pending Resolution of Mandamus, Recusal, and Jurisdictional Challenges" (Doc. 130); (5) a "Motion to Reassign and Objection and Related-Case Transfer" (Doc. 131), which appears to be essentially another recusal motion; and (6) a "Motion to Restore PACER and ECF Filing Access" (Doc. 132). The surfeit of filings has also spilled over into related cases pending before the Court (discussed further below). In *Muhammad v. Gap, Inc. et al.*, Muhammad submitted five new filings on November 25, 2025, and filed eight separate motions on November 26, 2025. (*See Muhammad v. Gap, Inc. et al.*, No 2:25-cv-1379 (S.D. Ohio), Docs. 3–5, 7–8, 10–17). At around the same time, Muhammad filed six new motions in *Muhammad v. The Hartford*. (*See Muhammad v. The Hartford*, No. 2:25-cv-1323 (S.D. Ohio), Docs. 23–28). And that's on top of the dozen filings that Muhammad had *already* submitted in that case. (*See Muhammad v. The Hartford*, No. 2:25-cv-1323 (S.D. Ohio), Docs. 6–16, 19).

case citations)). But the Court has good cause to believe that the number is in fact higher—indeed, as described above, *see* supra note 2, the Court has good reason to believe that even Muhammad's most recent filings may reflect errant citations.

Moreover, Muhammad's pattern of repeatedly filing related motions—without providing the Court or the other parties even the chance to respond to the already-filed motions—further exacerbates the harassing nature of those filings. *See* supra note 4. As just one example, in a two-week period in mid to late May, he filed four separate motions to amend his Complaint. (*See* Docs. 65, 66, 67, and 68).

But because the conduct on which the Court relies in designating him vexatious all arose from this case (as opposed to multiple separate cases), the Court has endeavored to structure relief that is narrowly tailored to address Muhammad's "specific vice," i.e., submitting a deluge of frivolous filings in this case and then refusing to participate in the proceedings necessary to resolve those filings. *Clemons*, 2019 WL 7567197, at *3. While it is possible that Muhammad's conduct warrants an even broader restriction than the one the Court orders here, the Court concludes that, at least on the first go-around, a court should tailor filing restrictions to matters involving the particular subject matters and defendants that gave rise to the need for the restriction in the first instance. *See Andrews v. Heaton*, 483 F.3d 1070, 1077 (10th Cir. 2007) (Gorsuch, J.) (narrowing a district court's vexatious-litigant filing restrictions because, at least the first time a court imposes them on a given litigant, they should be tailored to the particular subject matter and defendant).

Accordingly, the Court imposes only the following restriction. Absent a certificate from an attorney admitted to the bar of this Court stating that there is a good-faith basis, or leave or express permission of the Court, Muhammad may not (1) initiate any new action in the Southern District of Ohio that is related to the subject matter of this action, (2) submit any filing in any pending case in the Southern District of Ohio related to the subject matter of this action, including Case Nos. 2:24-cv-3676 (this case), 2:25-cv-1379, and 2:25-cv-1323 (all of which are assigned to the undersigned), or (3) submit filings in cases that are related to the subject matter of this action and that have been removed from state court to the Southern District of Ohio. *See Hobbs v. Ohio Adult Parole Auth.*, No. 1:13-cv-928, 2024 U.S. Dist. LEXIS 137298, at *7–8 (S.D. Ohio Aug. 1, 2024) (ordering a vexatious-litigant prefiling restriction that barred the litigant from "filing any further documents or filing a new case in the United States District Court for the Southern District of Ohio on any of [the] grounds or collateral arguments raised in this case or in [a related case]"); *Andrews*, 483 F.3d at 1077 (ordering a restriction that covers "these or future matters related to the subject matter of Mr. Andrew's three federal lawsuits").

To implement the first part of this restriction, the Clerk is directed to forward any pro se complaint that Muhammad seeks to file in this Court, before accepting the complaint for filing, to the undersigned for a determination as to whether it is subject to this Order. As to the second part, the Clerk is directed to refuse to allow Muhammad to make further filings in Case Nos. 2:24-cv-3676 (this case), 2:25-cv-1379, and 2:25-cv-1323 (all of which are assigned to the undersigned) without the

13

required attorney certification or leave from the Court. The only exception to that shall be as to any notice of appeal that Muhammad may wish to file in any of those cases, which the Clerk shall allow him to do. Finally, as to any case that Muhammad files in the future in state court, and which is then removed to the Southern District of Ohio, Muhammad shall, within thirty days of the date on which the action is removed, provide a copy of this Order to all opposing parties in the removed action, who may then decide whether to seek reassignment to the undersigned on related-case grounds. Should he fail to provide the Order as required, the Court advises Muhammad that he may be subject to sanctions in that case up to and including dismissal of the case with prejudice, as the assigned judge deems appropriate.

As already noted, the Court does not take any of the above steps lightly. But the Court cannot continue to overlook Muhammad's refusal to participate in good faith in the actions that he commences, nor his ongoing efforts to deluge the Court with frivolous and unsupported arguments. Our court system has limited judicial resources—(mis)directing those resources to any one case necessarily imposes harms on other litigants in other cases in the form of delays. And in a similar vein, conduct like that in which Muhammad has engaged here imposes significant costs on the parties he sues, who end up paying attorneys to attend hearings that do not occur, or to respond to motions that are built on hallucinated foundations.

To be clear, just like any litigant, Muhammad is entitled to pursue his legal rights and remedies through lawsuits. But also like any litigant, he must do so in a

manner that is consistent with seeking justice, rather than using the litigation process as a tool for waste and abuse.

## CONCLUSION

For the reasons stated, the Court **DENIES** Muhammad's renewed Motion for Recusal (Doc. 127), **DISMISSES** this case **WITHOUT PREJUDICE**, **DENIES** all other outstanding motions in this case as moot, and directs the Clerk to **ENTER JUDGMENT** in favor of Defendants Gap Inc., Seth Vogelstein, Verisk Analytics, and the Hartford,[5] in the amount of $375 each, for a total award of $1,500 against Muhammad. The Court further **DESIGNATES** Muhammad a vexatious litigant. Consistent with that determination, the Court **ORDERS** the Clerk as follows:

- First the Clerk shall not accept from Muhammad any filing that purports to initiate in the Southern District of Ohio a new case that is related to the subject matter of this case, absent a signed certificate from an attorney who is a member in good standing of the bar of this Court stating that there is a good-faith basis for the filing, or absent leave or express permission from the Court. In connection with that, the Clerk is **DIRECTED** to forward any pro se complaint that Muhammad seeks to file in this Court, before accepting the Complaint for filing, to the undersigned for a determination as to whether it is subject to this Order.

---

[5] As noted above, the Defendants consisted of four separately represented groups. The Court is awarding $375 to each of these groups by selecting a given Defendant in each group. To the extent that does not reflect which Defendant actually paid for the attorney time, the Defendants are free to remit the funds to the appropriate Defendant in the group.

15

- Second, the Clerk is **DIRECTED** to refuse to allow Muhammad to make any further filings in Case Nos. 2:24-cv-3676 (this case), 2:25-cv-1379, or 2:25-cv-1323 (all of which are assigned to the undersigned) without the required attorney certification or leave from the Court, with the exception being any notice of appeal that Muhammad may wish to file in any of the listed actions, which the Clerk shall allow.

- Third, as to any case that Muhammad files in state court, but that any defendant then removes from state court to the Southern District of Ohio in the future, Muhammad shall, within thirty days of the date of removal, provide a copy of this Order to all opposing parties in that action, who can then decide whether to seek reassignment to the undersigned on grounds that the case is related. Should Muhammad fail to provide the Order as required, the Court advises Muhammad that he may be subject to sanctions up to and including dismissal of that case with prejudice, as the assigned judge deems appropriate.

Finally, the Court **DIRECTS** the Clerk to **TERMINATE** this matter on the Court's docket.

    **SO ORDERED.**

December 10, 2025
**DATE**

                                **DOUGLAS R. COLE**
                                **UNITED STATES DISTRICT JUDGE**